Fletcher Altman SMITH, et al.

v.

Don HEATH, et al.

No. 76–188–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 26, 1980.

George C. Paine, II, Nashville, Tenn., for plaintiffs.

Wm. F, Howard, Peter H. Curry, Metro Attys., H. Stanley Allen, Jr., Keith M. Lundin, Nashville, Tenn., for defendants.

MEMORANDUM

MORTON, Chief Judge.

*"The Shoot Out at the O.K. Motel"*

Fletcher Altman Smith and Marguerite Betty Smith sue for the violation of their constitutional rights, alleging illegal arrest, excessive force, and illegal search and seizure by defendants Heath and Rohtert in contravention of 42 U.S.C. § 1983. This court has jurisdiction pursuant to 28 U.S.C. § 1343.

Fletcher Smith, hereinafter referred to as "the shootee," operates a motel at 901 Dickerson Road, Nashville, Tennessee, hereinafter referred to as "the O.K. Motel." He resides in the rear portion of this motel. This rear portion has an entrance through his kitchen.

Marguerite Betty Smith, sometimes hereinafter referred to as "Grandma," is employed by the shootee and was on the premises in the kitchen when the incident occurred out of which this case arose.

Defendant Don Heath was a traffic officer of Metropolitan Nashville-Davidson County and was on duty on May 23 and 24, 1975.

Defendant Jack Rohtert was the homicide officer of Metropolitan Nashville-Davidson County assigned to investigate the shooting of Smith by Heath and was on duty as such officer when the events hereinafter set out occurred.

This saga of the "shoot out" at the "O.K. Motel" in Nashville, Tennessee, on the 24th day of May, 1975, begins at the kitchen door marked "Private, keep out." Although police officer Heath, the shooter, asserts that Zip Smith, the shootee, was guilty of a minor traffic violation constituting a misdemeanor and was fleeing from arrest, this assertion has no legal bearing on the results of the case. The pertinent facts are that the shootee, after alighting from his motor vehicle, entered the kitchen and locked the door behind him. He walked through the kitchen, opened a bedroom door, entered the bedroom, and closed the door behind him. The shooter, making no announcement of his identity, without a warrant, consent, or cause to enter, physically kicked open the outside kitchen door and with gun in hand lunged into the kitchen. The shootee not being in that room, the shooter opened the bedroom door while still standing in the kitchen and fired four shots at the shootee. Grandma screamed at the shooter that her granddaughter was in the bedroom. She rushed into the bedroom and with her body between the shooter and the shootee removed the small child. The shooter ceased firing while Grandma was in the bedroom carrying the child. However, after she left the bedroom carrying the child,[1] the shooter fired two more shots at the shootee. These six shots were the only shots that were fired in the "shoot out" at the "O.K. Motel." The shootee was hit by three bullets. One of these wounds was the result of the last two shots that were fired.

Potential liability of the shooter having been established, shooter claims he is not liable because he shot shootee in self defense. He states that after he entered the kitchen and opened the bedroom door, shootee was in the act of loading an empty shotgun while simultaneously pointing it at shooter. The credible testimony is not to this effect and does not bear out this contention. The bedroom had gun racks on the walls with loaded guns therein, all within the reach of shootee. No explanation was proffered as to why shootee would attempt to load an empty gun to shoot at shooter instead of using a gun which was ready for firing. Nor was any explanation proffered as to the reason the shooter, when he opened the bedroom door and saw the shootee with a weapon, did not slam the door and step behind the adjacent wall. Even more unusual was the failure of the shooter to retreat when Grandma was removing the

---

1. The time lapse between the first four shots and the last two is not fixed precisely. However, it may be gauged by the following facts. Another police officer entered the kitchen as the last of the first four shots were fired. As a result of communication from the shooter, he left the kitchen, ran to a police vehicle, used the radio to call for "backup" and then ran slightly more than 150 feet. After completing these activities the last two shots were fired.

small child from the area of fire. This is especially important when he knew another officer was present. Shootee's version is much more logical and is fully supported by the credible evidence. As a result of a series of events which preceded the alleged traffic violation, shootee entered his motel to make a telephone call. After he had closed the bedroom door and taken steps toward an opening 10½ feet from the said door he heard the crash of the kitchen door and turned as the bedroom door was opened. He was shot as he turned to view the intruder. As he fell he grabbed the corner of a piece of furniture and the barrel of the unloaded shotgun to break his fall and to pull himself up. He was shot twice thereafter.

This incredible story does not end with this fiasco. Immediately thereafter the Metropolitan police, without permission and without a warrant, swarmed into the building and ransacked it and its furniture. The reasonable inference is that there was a desperate search to try to find some violation of the law to mitigate the obviously unconstitutional behavior of Heath, the shooter.[2] Officer Rohtert ordered the sequestration of all the evidence pertinent to the incident. He caused the plaintiff Marguerite Betty Smith, Grandma, to be taken into custody. After the search and seizure was completed, the police left the premises unattended and without a kitchen door. Three rifles valued at $450 disappeared. Grandma was taken to the police station where she was detained for several hours to give a statement covering the events of the night.

The medical bills of the shootee were $2,212.50. He was seriously injured, and his life was in the balance for a few days. He suffered severe pain. He was convinced that he would die. Grandma suffered an emotional trauma. As a result, she takes medicine to attempt to tranquilize the nervous condition which resulted from the events of the affair. Her unconstitutional arrest was a precipitating proximate cause of such medical disability.

2. No evidence of illegal acts or activity was uncovered by the police.

■ Under both federal and Tennessee law, an officer seeking to arrest a misdemeanant cannot use deadly force except in self defense. *Fults v. Pearsall*, 408 F.Supp. 1164 (E.D.Tenn.1975) and cases cited therein.

■ Under both federal and Tennessee law, an officer seeking to arrest a misdemeanant is a trespasser and may not forcibly enter private property. *Payton v. N. Y.*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *U. S. v. Killebrew*, 560 F.2d 729 (6th Cir. 1977). *See Long v. State*, 223 Tenn. 238, 443 S.W.2d 476 (1969); *Shelton v. State*, 3 Tex.Cr.App. 310, 460 S.W.2d 869 (1970). It is also true that the municipal police department had no policy that could be construed as permitting the use of deadly force to arrest a misdemeanant or to authorize an officer to forcibly enter a residence to effect the arrest of a fleeing misdemeanant.

■ The court finds:

(1) the acts of Heath and Rohtert, as well as the other Metro police officers, were performed under color of state law;

(2) the entry of the shooter into the kitchen and his opening the bedroom door was an unconstitutional infringement of plaintiffs' rights and constituted an unlawful entry;

(3) the shooting of the shootee by the shooter was not justified and was an unlawful, unconstitutional act which violated the constitutional rights of the shootee;

(4) the entry of the police officers into the building and the subsequent search thereof constituted an unlawful search and seizure in violation of the Constitution of the United States;

(5) the taking of Grandma into custody constituted an illegal arrest in violation of the Constitution of the United States; and

(6) the acts of Heath, Rohtert, and the other police officers were willful, reckless, and in complete disregard of the constitutional rights of both plaintiffs.

The members of the police department who engaged in the unlawful search and seizure at the motel assert that since the shooting had taken place and the shootee was in dire distress, there was a compelling need for official action and thus no time to secure a search warrant. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Suffice it to say that this court having found that Heath, a policeman operating under color of law, violated the constitutional rights of the shootee, the only compelling need or urgency was to hospitalize the shootee. Instead, in an effort to find some evidence to mitigate the impact of those unconstitutional acts, the defendant Rohtert and his subordinates engaged in an unconstitutional orgy of unique proportions. They were not performing routine nor normal police procedures. Under the peculiar circumstances of this case, the defendant officers did not believe that their acts were proper, they knew that their motives had no relation to the performance of their official duties, and there was no probable cause for the actions taken. Not one of the defendants is entitled to the defense of good faith or that there was probable cause for their actions.

In addressing the question of damages, the court will first consider the damages of Mr. Smith. At the time of the incident he was approximately 60 years of age and in good health. He was wounded by three projectiles, lost much blood, his stomach was opened by surgeons, and he felt he was going to die. For some days he was in a critical condition. Thereafter, he had a convalescent period of several weeks. He suffered much pain. He is nervous, and loud noises affect him adversely.

As to the defendant Heath, Mr. Smith shall recover the following as compensatory damages:

(a) pain and suffering $80,000.00
(b) impairment of enjoyment of life 5,000.00
(c) violation of his constitutional right not to be shot 5,000.00
(d) hospital bill 2,212.50

*Thompson v. Railroad*, Slip Op. 79–1343–44 (6th Cir. 1980). The court makes no award for permanent injuries because the proof thereof merged into the category of impairment of enjoyment of life.

As to the defendant Rohtert, Mr. Smith shall recover compensatory damages as follows:

(a) unlawful entry and search and seizure $5,000.00
(b) loss of three rifles when premises left unattended 450.00

As to the defendant Rohtert, Mrs. Smith shall recover as compensatory damages for her unconstitutional arrest and retention for several hours, the sum of $5,000.00. In addition, for her nervous condition she shall recover an additional $5,000.00.

As before stated, the court finds that the defendants Heath and Rohtert were guilty of wilful misuse of police power. The court feels that an award of punitive damages is required. This type of conduct cannot be countenanced. Therefore, Mr. Smith shall recover from officer Heath the sum of $25,000.00 and from officer Rohtert the sum of $5,000.00 as punitive damages. Mrs. Smith shall recover from officer Rohtert the sum of $2,500.00 as punitive damages.

This is an appropriate case for the award of attorney fees. A separate hearing will be scheduled for this purpose.