WILKINSON, Circuit Judge,
concurring in the denial of rehearing en banc:
I appreciate the views of my dissenting colleague and add only these words to the panel opinion. Hunsberger v. Wood, 570 F.3d 546 (4th Cir.2009). I believe the panel’s judgment to be quite correct and fully consistent with the Supreme Court’s often repeated objective of not subjecting officers making difficult discretionary judgments to monetary liability and retrospective relief. See Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir.2009). The cases reiterating this principle are well-known and too numerous to mention, and the almost unparalleled frequency of the principle’s iteration by the Court attests not only to its importance to law enforcement but also to its extension of simple fairness to officers who cannot be said to be liable for actions that are found unlawful only by courts splitting hairs in hindsight. See, e.g., Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
Whatever the prong of the Pearson inquiry, the ultimate touchstone is one of objective reasonableness. Multiple objective indicators made the officer’s judgment a reasonable one here. The presence of Mr. Blessard in plaintiffs’ home was solely to aid the officer in finding Blessard’s lost and quite possibly endangered stepchild. JA 404, 407. A teenage girl was missing after midnight. JA 1176-77. She was not where she was supposed to be. JA 363, 368-69, 1308. She did not respond to any of her stepfather’s repeated attempts to reach her by cell phone. JA 385, 547. Her stepfather was by all accounts, even the plaintiffs’, “worried sick” about his stepdaughter. JA 966, 607, 383. The child’s car was parked outside the home of plaintiff (a stranger), blocking the road. JA 369, 1279-80. A home in the immediate neighborhood had recently burned down as the apparent result of unauthorized use. JA 1315-16. There had been two 911 calls about activity at the Hunsberger home. JA 911, 915. A neighbor informed the officers that the Hunsbergers were on vacation. JA 231, 1269. As the officers approached the home, two people fled the darkened premises. JA 149-50. The two officers indicated independently that upon their approach, lights turned off, JA 1284, 1413, and despite repeated rings of the doorbell, no one answered the door, JA 1121, 1176, 1290-91, 1422-23.
While plaintiffs attempt to create a disputed issue of fact as to this last sentence, they do not dispute that two people fled the premises upon the officers’ approach. JA 149-50. Nor do they dispute the reasonableness of Sergeant Wood’s overall perception that there was suspicious behavior at the Hunsberger home, that whoever was inside desperately wished to avoid contact with the police, and that the *221 officer heard strange noises in the garage and a basement door shut and lock upon his approach. JA 1309, 1176-77. However one tries to slice and dice it, any objectively reasonable officer would have been concerned not only for the safety of the Hunsbergers’ property but for the safety of the occupants inside.
Now of course in a situation that unfolded as rapidly as this one did, there will invariably be points of disputed recollection. In fact, the remarkable thing about this case is how little is in dispute, given the run of cases that we have seen where material matters were genuinely at issue. To find liability under these circumstances would simply deal a heavy blow to the capacity of law enforcement to protect persons and property in situations where perfectly reasonable people would perceive them to be at real risk. Where protective police activity even to ensure human safety carries heavy monetary consequences and a failure to act carries no penalty at all, see DeShaney v. Winnebago County Dep’t of Soc. Servs., 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), it is not difficult to predict that the incentives for inaction will at some point discourage even the most sensible and prudent protective steps.
I repeat that the officer here confronted two different, mutually-reinforcing situations — the need to prevent vandalism and to locate a missing girl before she was seriously harmed. By the time the officer filled out a warrant affidavit and tried to rustle up a magistrate in the wee hours of the morning, it may well have been too late. If we were to hold the officer liable for damages in this situation, we would go far to establishing a broad rule that would prevent police from taking even the most reasonable steps to prevent serious damage to absent homeowners’ property and to locate missing minors who might be in situations beyond their capacity to cope.
Plaintiffs seem to suggest that the Fourth Amendment requires a flat rule against the presence of civilians in a home during an officer’s search. But a flat rule is not consistent with the reasoning of Wilson v. Layne, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Wilson did not establish a blanket rule against the presence of civilians during searches; instead, it made clear that courts must undertake case-by-case inquiries into whether a third party’s presence is “related to the objectives of the authorized intrusion.” Id. at 611, 119 S.Ct. 1692. This is far from a flat rule against the presence of civilians, and it is unclear how plaintiffs derive the principle for which they argue.
The flaws of a per se rule against third-party entries become evident when one considers how it would apply in practice. There are innumerable situations where during a home entry an emergency might require the presence of a person who is not a police officer. Firefighters must enter a home to battle a blaze. Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Someone who is a doctor or nurse or a lay person who knows how to administer first-aid might provide critical medical services to persons injured in their homes. Explosive experts must enter dwellings to identify and disarm dangerous bombs. Police officers often need property owners to identify their belongings to determine whether they have been stolen. See, e.g., Bellville v. Town of Northboro, 375 F.3d 25, 33 (1st Cir.2004). Bystanders or neighbors sometimes need to assist officers in identifying a victim. Someone who speaks Spanish or any number of languages might be required to translate during the search of a home of someone who does not speak English. These situations are absolutely legion, and cannot all be resolved by some flat rule in advance. Instead, courts must deal with *222 them on a case-by-case basis, evaluating the justification for the presence of the third party in light of the reason for the entry. A per se rule would effectively overrule the Wilson case and would prevent police officers from seeking critical help from civilians during searches. In fact, the panel explicitly adopted a narrow holding, tied closely to the facts, to be elaborated only as specific cases and circumstances arise.
The facts which I have recounted above in this case would certainly have suggested to an objectively reasonable officer that this teenage girl was not only missing but possibly hurt and incapacitated. Not to belabor the point, but any parent whose daughter was out after midnight, not answering her cell phone, in a house where she was not supposed to be, in a neighborhood where another residence had only recently burned down, with her car blocking the road, etc. would be alarmed, as plaintiffs admit Blessard was. And any reasonable officer would have tried to help. Even adopting plaintiffs’ view that Wood expressly consented to Blessard’s presence, as the panel’s opinion explicitly did, Wood acted reasonably. It was reasonable for Wood to think that Blessard’s presence in the home would be useful. The more quickly Wood could identify NW, the more quickly he could determine whether she needed assistance. And if she was frightened and hiding in the home, the one thing she might respond to was a parent’s reassuring voice. If the missing NW was being held against her will, she might well answer a parent, but not a stranger.
Even to this day, plaintiffs have not suggested any remotely practical course of action Wood should have pursued. Wood could have entered alone and asked any girl he encountered to identify herself. But he had no guarantee of getting an answer, much less a truthful one. He wasn’t even sure the missing girl was conscious or hadn’t passed out. He could have required any girl who was possibly the missing NW to come outside in the dark after midnight to be identified by Blessard, but such a procedure would be more traumatic to young girls than the one actually used. Further, these alternatives would have been time-consuming, and time was one thing this officer did not have a whole lot of. It’s always tempting to go the could-have/should-have route in hindsight, but that is not how the Supreme Court has structured the objective reasonableness inquiry. If a unanimous panel of this court believed upon reflection that Wood’s actions were reasonable, how was he to figure otherwise in the fleeting minutes he had? We thankfully know now that NW is safe and that the Hunsberger home was not vandalized or burned to the ground. But no one knew at the time.
For these reasons and those expressed in the panel opinion, I believe en banc review was properly denied.