**[J-12-2018] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 40 MAP 2017 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 296 MDA 2016 dated |
| | : | December 05, 2016, Reconsideration |
| v. | : | denied February 9, 2017, Affirming the |
| | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Cumberland |
| ASHLEY LAUREN WILMER, | : | County, Criminal Division, at No. CP- |
| | : | 21-CR-0003487-2013, dated February |
| Appellant | : | 16, 2016. |
| | : | |
| | : | ARGUED:  May 15, 2018 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                      **DECIDED:  September 21, 2018**

In *Commonwealth v. Livingstone*, 174 A.3d 609 (Pa. 2017), this Court held that "[o]nce assistance [pursuant to the emergency aid exception] has been provided or the peril mitigated, further police action will be evaluated under traditional Fourth Amendment jurisprudence[.]"  *Id.* at 627.  The Majority foregoes the *Livingstone* evaluation of further police action under Fourth Amendment jurisprudence and substitutes a requirement that "once the emergency that permitted the Troopers' initial entry ceased, their right of entry . . . under the emergency aid exception also ceased."  Majority Op. at 20.  Therefore, according to the Majority, the Troopers "must **leave the residence** unless some other exception to the warrant requirement permits their continued presence."  *Id.* at 13 (emphasis in original).

In so holding, the Majority has created a new requirement that the moment the emergency is abated, any police presence must independently satisfy a separate Fourth

Amendment exception, or they must leave the premises. The Majority invokes this rule even where the police presence is a continuation of an entry pursuant to the emergency aid exception in order to complete an incident report for property damage, and not for investigatory purposes. Because I cannot agree with the Majority's alteration of this Court's holding in *Livingstone*, I dissent.

In the instant matter, the Troopers' exit from the sorority house to obtain their incident report form, and subsequent reentry to complete it, was deemed a lawful reentry by the trial court, and ultimately an unlawful reentry by the Majority. However, I agree with the Superior Court that these were not two separate warrantless entries, but rather it was one continuous episode under the emergency aid exception of the community caretaking doctrine. Critical to this conclusion is the fact that the officers were not entering for investigative purposes but only to conclude the lawful warrantless entry, which resulted in damaged property. The cases cited by the Majority to support the termination of a lawful police presence all hold that the end of the presence related to the emergency aid, and the start of a separate investigation into criminal activity, is the point at which the officers are no longer lawfully present. *See Mincey v. Arizona*, 437 U.S. 385, 393 (1978) (holding the entry by the homicides detectives to conduct "a four-day search that included opening dresser drawers and ripping up carpets can hardly be rationalized in terms of the legitimate concerns that justify an emergency search[]"); *United States v. Goldenstein*, 456 F.2d 1006, 1010 (8th Cir. 1972) (holding that when the officer was satisfied the suspect he was pursuing was not in the room he had entered without a warrant he could not conduct a search of a closed suitcase or seize the contents within the suitcase because they were not in plain sight); *State v. Neighbors*, 328 P.3d 1081,1093 (Kan. 2014), (holding that following a lawful warrantless entry to assist an unresponsive male,

"[t]he emergency aid exception could not be invoked as a basis for validating the trespass investigation[]").

It is my view that the Majority's focus on the separate entries into the sorority house is misplaced. In each of the aforementioned cases relied on by the Majority, officers may have entered and exited the premises numerous times in order to complete their duty pursuant to the emergency aid exception, but the fact of the each ingress and egress from the property has never been the focus of the analysis. The focus and analysis in those cases concern when the officers cease providing emergency aid and shift to investigating a crime. Conversely, the Majority's analysis here does not focus on the troopers' conduct in attempting to complete an incident report related to their lawful entry, nor analyze whether this was the beginning of a separate investigation for criminal activity as is the required threshold question. Instead, the Majority's focus is limited to the two separate entries, but creates a rule that will apply to circumstances with only one entry followed by a continued police presence. The Majority opinion seems to suggest that had the Troopers' not left at the point in time that they determined the visibly intoxicated young man on the roof had fallen to the ground, any further presence in the sorority house would also have been unlawful. *See* Majority Op. at 13, 20. This rule precludes any follow up related to the circumstances of the entry to aid in an emergency. As written, this rule allows police officers to lawfully break windows or doors in furtherance of emergency aid, but requires them to immediately leave once the emergency has ended without properly documenting the damage and ascertaining the owner of the property.

Further, contrary to the Majority's assertion, I do not suggest that a "gathering information to complete paperwork" exception to the Fourth Amendment exists. Majority Op. at 21, n. 16. Rather, I believe the troopers' presence to complete an incident report directly related to the property damage caused is encompassed in the entry pursuant to

the emergency aid exception. To require an immediate exit preventing all matters of follow up oversimplifies real life factual scenarios. However, I recognize that if the troopers were reentering to engage in an investigation, they would be required to satisfy a separate Fourth Amendment exception.

Accordingly, I would affirm based on the well-reasoned analysis of the Superior Court. The Troopers were lawfully present pursuant to the emergency aid exception, and "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Mincey*, 437 U.S. at 393 (citing *Michigan v. Tyler,* 436 U.S. 499, 509-510 (1978); *Coolidge v. New Hampshire*, 403 U.S. 443, 465-466 (1971) (parallel citations omitted)).