**UNITED STATES of America, Appellee,**

v.

**Charles Emmett HOFFMAN, Defendant.**

**No. 79–1254.**

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1979.

Jo Ann Diamos, Asst. Federal Public Defender, Tucson, Ariz., for defendant.

Virginia A. Mathis, Asst. U.S. Atty., Tucson, Ariz., argued for appellee; Gerald S. Frank, Asst. U.S. Atty., Tucson, Ariz., on the brief.

Before ELY and HUFSTEDLER, Circuit Judges, and TAYLOR,* District Judge.

ELY, Circuit Judge:

Charles Emmett Hoffman appeals his conviction of having unlawfully possessed a sawed-off shotgun (26 U.S.C. §§ 5861(d) and 5871) and of being a convicted felon in possession of a firearm (18 U.S.C.Appendix § 1202(a)(1)). Hoffman argues that the warrantless seizure of a shotgun from the bedroom of his trailer home was unlawful and that, therefore, the firearm should not have been admitted as evidence against him at trial.

Prior to the jury-waived trial on stipulated facts, the District Court conducted a suppression hearing at which appellant had

* The Honorable Fred M. Taylor, Senior United States District Judge for the District of Idaho, sitting by designation.

the opportunity to raise his claim that no exigent circumstances existed which would have justified a search without a warrant. The District Court found adversely to appellant, concluding that an early morning fire in appellant's trailer excused police from the necessity of seeking a warrant.

## I.

The firearm that is the subject of Hoffman's prosecution was discovered by a Tucson, Arizona, fireman who had responded to a firecall to Hoffman's trailer. According to fire department records, Hoffman's landlady, who lived in a trailer adjacent to Hoffman, called the fire department about 2:30 a. m. on March 7, 1978, to report smoke coming from Hoffman's trailer. About six minutes later, fire department equipment arrived and, by 2:42 a. m., the fire was reported under control. Following routine procedures, firemen removed Hoffman's smoldering mattress from the trailer. When they did so, one of the firemen observed a sawed-off shotgun beneath the mattress near the head of the bed. The fireman picked up the gun, opened it, determined that it was not loaded, and placed it on a nightstand next to the bed.

Then, at 3:10 a. m., approximately 27 minutes after the fire had been reported under control to the fire department dispatcher, Officer Heiden of the Tucson Police Department arrived on the scene. According to some evidence introduced in the suppression hearing, firemen were still going in and out of the trailer, but it was not clear what they were doing inside the trailer at that time. There is no intimation in the record that the firemen were continuing to fight a blaze. Officer Heiden did testify that when he arrived he "did not observe any smoke or anything."

Officer Heiden further testified that, as he got out of his patrol car, a fireman came up to him and told him there was a sawed-off shotgun inside the bedroom of the trailer. Immediately, the police officer entered the trailer with the express purpose of seizing the weapon. After retrieving the shotgun, the police officer left the trailer without assisting fire personnel in any manner, turned the weapon over to a fellow police officer who had since arrived on the scene, and then proceeded to interrogate the appellant, who at that time was sitting in his landlady's adjacent trailer.

At the suppression hearing, in justifying Officer Heiden's entry into the trailer, the District Court held that the police officer had the right to enter the trailer as part of his assignment to assist the fire department in the control of the fire. The District Court described the entry as being only for the purpose of determining "what might be required of him as an assignment, as part of his assignment . . . ." The seizure of the weapon itself was then justified under the plain-view exception to the warrant requirement, the District Court having held that the initial entry by Officer Heiden was lawful.

We have concluded that the District Court's determination that the fire, which had been extinguished prior to Officer Heiden's arrival, created an exigent circumstance excusing any need to obtain a warrant prior to entering the trailer was not supported by the facts. Accordingly, we reverse.

## II.

The validity of the search and seizure at question here depends on whether Officer Heiden had a right to enter Hoffman's trailer without a warrant. We note at the outset that warrantless searches and seizures are *per se* unreasonable and that the Government bears a heavy burden to justify dispensing with the warrant requirement of the Fourth Amendment. *Arkansas v. Sanders,* —— U.S. ——, ——, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979) (" 'the burden is on those seeking the exemption to show the need for it.' *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59 (1951)."); *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

This is because,

> [i]n the ordinary case . . . , a search of private property must be both reasonable and performed pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment.

*Arkansas v. Sanders, supra,* at ——, 99 S.Ct. at 2590.

When circumstances are such that those few "jealously and carefully drawn" (*Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)) exceptions are called into play, the intrusion must be " 'strictly circumscribed by the exigencies which justify its initiation.' *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *Mincey v. Arizona, supra,* 437 U.S. at 393, 98 S.Ct. at 2414.

 Appellant does not claim, nor could he, that the firefighters who entered his trailer to put out fire did so unlawfully. It is well established that firefighters may enter a burning building in order to extinguish a blaze without first having to stop on the way to the fire to obtain a warrant. *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Moreover, while on the premises to fight the fire, the firemen may seize evidence of arson that is in plain view and may, as well, remain on the scene for a reasonable time after the fire is extinguished in order to investigate its cause. *Id.* at 509–10, 98 S.Ct. 1942. Under certain circumstances, *fire investigators* may even reenter a premises after once vacating the fire scene, so long as the reentries take place within a reasonable investigation period. *Id.* at 511, 98 S.Ct. 1942.

 Hoffman's claim, however, is, and was, that no exigent circumstances existed which justified the warrantless entry by a *police officer.* Certainly, Officer Heiden, when told of the presence of the shotgun by the firefighter, had probable cause to believe that the trailer contained evidence of a violation of federal law. Warrantless entries, however, may not be made on the basis of probable cause alone. *Katz v. United States,* 389 U.S. 347, 356–57, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Agnello v. United States,* 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Absent exigent circumstances giving Officer Heiden a right to be in the trailer, the plain-view observation of the shotgun would be tainted by the officer's unlawful presence and the shotgun would be rendered inadmissible as the "fruit" of the illegal entry. *Wong Sun v. United States,* 371 U.S. 471, 484–87, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Dugger,* 603 F.2d 97 at 98 (9th Cir. 1979).

 Our examination of the record leads us to conclude that, at the time Officer Heiden entered the trailer, no immediate emergency existed which could have served to justify his warrantless entry. The mere fact that a fire has occurred does not give police officers *carte blanche* to enter one's home, even when armed with probable cause to suspect that evidence of a crime may be within the premises. *See Michigan v. Tyler, supra,* 436 U.S. at 505–06, 98 S.Ct. 1942. Here, the fire was clearly under control. The gun was not a fire hazard nor, with firemen securing the trailer and with appellant confined to his landlady's trailer, was there any necessity to seize the weapon in order to protect it from destruction. *Cf. United States v. Flickinger,* 573 F.2d 1349, 1356 (9th Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Guidry,* 534 F.2d 1220, 1223 (6th Cir. 1976) (police officer's warrantless entry into residence excused by the need to seize counterfeit bills occupants were deliberately burning).

 Moreover, we find no evidentiary support for the District Court's conjecture that, when Officer Heiden arrived on the scene, the trailer "may" have still been burning. The fire department records clearly indicate that the fire had been under control for almost 30 minutes. Officer Heiden himself testified he saw no visible signs of an ongoing fire when he arrived. It warrants repetition to reiterate, and reemphasize, that it is the Government that bears the heavy burden of justifying a

search conducted without there first having been obtained a warrant authorizing the search. The Government does not satisfy this burden by leading a court to speculate about what "may" or "might" have been the circumstances surrounding the warrantless search. *See United States v. Dugger, supra,* at 99, n. 5.

We think we should note that at least one court has held that police may reenter a residence without a warrant even though the emergency situation which justified the initial entry has terminated. *United States v. Brand,* 556 F.2d 1312, 1317 (5th Cir. 1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978). There, however, the court held that the police who make the second entry must restrict their later intrusion to the scope of the initial invasion. *Id.* at 1317, n. 9. This, of course, was also the holding in *Michigan v. Tyler, supra,* 436 U.S. at 511, 98 S.Ct. 1942. *See also Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Cupp v. Murphy,* 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973) ("[T]he scope of the warrantless search must be commensurate with the ra-

tionale that excepts the search from the warrant requirement.").

In this case, the warrantless entry of the police officer, following that of the firefighters, exceeded the scope of the initial intrusion by the firemen. Officer Heiden did not enter the trailer to aid in extinguishing the blaze or to investigate its cause. His only purpose in entering appellant's trailer, as he forthrightly admitted, was to seize evidence of an unrelated federal crime. The fact that the police officer's actual physical intrusion was no greater than that of the firemen [1] does not control our examination of appellant's Fourth Amendment claims. The physical invasion of a property interest is not the essence of a Fourth Amendment violation. *Katz v. United States, supra,* 389 U.S. at 351–53, 88 S.Ct. 507 (1967); *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir. 1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977). Rather, "the Fourth Amendment protects people not places." *Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511. Fire victims do not abandon all reasonable expectations of privacy.[2] *Michigan*

---

1. The District Court told appellant's counsel at the suppression hearing,

 > [a]nd you are drawing this thing so fine that it would be ridiculous to insist that when he's told that there is a sawed-off shotgun that's in the house that has just been burning, may be still burning, that therefore they should get on a telephone at 3:00 o'clock in the morning and get somebody to issue a search warrant.
 >
 > I say that once the fire department came in there and necessarily broke the secrecy of the place and saw the weapon, it was not illegal for the officer who is told about it to come in promptly thereafter.
 >
 > Now if they waited until the next day or until 6:00 o'clock in the morning or something like that and went back out there, there would be some basis to the argument, but I think the authorities are against you on the way that you are trying to cut the thing so finely.
 >
 > \* \* \* \* \* \*
 >
 > . . . [C]onstitutional rights are judged sensibly. And this is my point, that you are, well, just flyspecking in the matter. It's not a practical consideration of the evidence in this case, and consequently the motion [to suppress] is denied.

 As for the District Court's comments pertaining to fine line drawing and "flyspecking," we wish to draw the court's attention to recent words of the Supreme Court, engaged in just such "a line-drawing process":

 > [A]n apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights.

 *Arkansas v. Sanders, supra,* at ——, 99 S.Ct. at 2589.

2. [As to the] proposition—that innocent fire victims inevitably have no protectible expectations of privacy in whatever remains of their property—is contrary to common experience. People may go on living in their homes or working in their offices after a fire. Even when that is impossible, private effects often remain on the fire-damaged premises. The petitioner may be correct in the view that most innocent fire victims are treated courteously and welcome inspections of their property to ascertain the origin of the blaze, but "even if true, [this contention] is irrelevant to the question whether the . . . inspection is reasonable within the meaning of the Fourth Amendment." *Camara v. Municipal Court,* 387 U.S. 523, 536, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Once it is recognized that innocent fire victims retain the

*v. Tyler, supra,* 436 U.S. at 505, 98 S.Ct. 1942. One whose home is ablaze certainly should expect that firemen will enter in order to extinguish the fire. Likewise, one should also expect that these same firefighters will be looking for the source or cause of the fire while within the home. But, no citizen should reasonably expect that, because a fire has occurred in his home, and certain few officials may enter, any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion.

Our review of the record leaves us with the "definite and firm conviction that a mistake was committed" by the District Court. *See United States v. Flickinger, supra,* 573 F.2d at 1357. Clearly, the findings of the District Court that Officer Heiden's entry was a mere extension of the entry by fire department personnel constituted error.

### III.

█ Next, the Government argues that even if Officer Heiden's entry was unlawful, the shotgun inevitably would have been discovered during the course of a subsequent arson investigation. The Government relies upon dictum it finds within *United States v. Schmidt,* 573 F.2d 1057,

1065, n. 9 (9th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978), which suggests that our court has adopted the Seventh Circuit's "inevitable discovery" doctrine. *See Owens v. Twomey,* 508 F.2d 858, 865–66 (7th Cir. 1974).[3] We need not reach this issue because the Government never raised this alternative argument in the District Court, and the District Court never considered whether, in fact, the shotgun would have been discovered by arson investigators. From the briefs submitted herein, it is apparent that appellant hotly contests whether arson investigators ever entered the bedroom of appellant's trailer at all. Certainly, no direct evidence was offered by the Government at the suppression hearing which would support a finding that arson investigators entered the bedroom. The Government's entire argument to excuse proceeding without a warrant was based upon exigent circumstances. There was no allusion whatsoever to the theory of "inevitable discovery."

█ Matters not raised in the District Court will not ordinarily be considered on appeal. Our role as a court of appeals is not inquisitorial. *United States v. Choate,* 576 F.2d 165, 178 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1978).

protection of the Fourth Amendment, the rest of the petitioner's argument unravels. For it is, of course impossible to justify a warrantless search on the ground of abandonment [of a premises] by arson when that arson has not yet been proved, and a conviction cannot be used *ex post facto* to validate the introduction of evidence used to secure that same conviction.

Thus, there is no diminution in a person's reasonable expectation of privacy nor in the protection of the Fourth Amendment simply because the official conducting the search wears the uniform of a firefighter rather than a policeman, or because his purpose is to ascertain the cause of a fire rather than to look for evidence of a crime, or because the fire might have been started deliberately. *Michigan v. Tyler, supra,* 436 U.S. at 505–506, 98 S.Ct. at 1948.

**3.** This doctrine has not gone without criticism. *See United States v. Castellana,* 488 F.2d 65, 68 (5th Cir. 1974) ("To admit unlawfully obtained evidence on the strength of some judge's speculation that it would have been discovered legal-

ly anyway would be to cripple the exclusionary rule as a deterrent to improper police conduct."), *rev'd on other grounds,* 500 F.2d 325 (5th Cir. 1974) (en banc); *United States v. Houltin,* 525 F.2d 943, 949 (5th Cir. 1976); *United States v. Schipani,* 414 F.2d 1262, 1266 (2d Cir. 1969) (evidence obtained as a result of both legal and illegal means is inadmissible), *cert. denied,* 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970); *United States v. Paroutian,* 299 F.2d 486, 489 (2d Cir. 1962) (The "inevitable discovery" rule "would relax the protection of the right of privacy in the very cases in which, by the government's own admission, there is no reason for an unlawful search. The better the government's case against an individual, the freer it would be to invade his privacy. We cannot accept such a result. The test must be one of actualities, not possibilities."); Pitler, *"The Fruit of the Poisonous Tree"* Revisited and Shepardized, 56 Calif.L.Rev. 579, 630 (1968); Note, *"The Inevitable Discovery Exception to the Constitutional Exclusionary Rules,"* 74 Col.L.Rev. 88, 99–100 (1974).

Moreover, a reporter's transcript is presumed to be correct and we, as a reviewing court, should not base a decision upon "facts" or other matters that are not contained in the record. *United States v. Zammiello,* 432 F.2d 72, 73 (9th Cir. 1970).

Any attempt to overcome the illegality of a warrantless arrest by relying on a doctrine as fraught with speculation and guesswork as the inevitable discovery doctrine necessarily must have a strong factual foundation. Because no such foundation was laid here, we cannot accept the Government's invitation to engage in speculation and hold that the shotgun inevitably would have been found despite the illegal search and seizure.

The judgment of conviction is
REVERSED.