UNITED STATES of America,
Plaintiff-Appellant,

v.

George Michael URBAN,
Defendant-Appellee.

No. 82–1143.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 19, 1983.

Decided June 29, 1983.

Rehearing Denied Aug. 31, 1983.

Leonard R. Gilman, U.S. Atty., Alan Gershel, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellant.

Kenneth M. Mogill (argued), Detroit, Mich., for defendant-appellee.

Before KENNEDY, JONES and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

The United States appeals from a district court order granting George Michael Urban's motion to suppress evidence. The question presented on appeal is whether the government's warrantless seizure of evidence from the defendant's fire-damaged premises on the morning after the fire was proper under *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). For the reasons stated below, we find no

fourth amendment violation and reverse the district court's suppression order.

## I.

At approximately 9:00 p.m. on January 20, 1981, Detroit firefighters responded to a fire at a residence owned by the defendant. As several firemen prepared to enter the burning structure, they suddenly heard "hundreds" of explosions coming from inside the house, and saw tracers "flying all over." The firemen dove onto the porch and remained there for several minutes until the explosions stopped. When the fire was extinguished, the firemen entered the house and saw thousands of packaged firecrackers, along with large quantities of explosive chemicals and other materials for making firecrackers and fireworks. Since the firemen had not been trained in removing explosive materials, they notified their central dispatching office, who in turn notified the Detroit bomb squad and the Bureau of Alcohol, Tobacco, and Firearms (ATF).

At about 10:00 p.m., ATF agent Roy Smith arrived at the residence and searched the house with officers from the bomb squad and the fire department's arson investigation unit. Using flashlights, they identified large quantities of explosive paraphernalia, including several 55-gallon chemical drums in the basement, a punch press, fusing, cardboard tubes and caps, and other Class C explosives.[1] The chemical drums, which contained oxidizing agents such as potassium perchlorate, aluminum and potassium perchlorate, and sulfur and potassium perchlorate, each weighed between 150 and 300 pounds. Sgt. Dale Johnston, a member of the bomb squad, described these chemicals as "explosive materials" and "hazardous." The record also indicates that the houses in this residential area are extremely close together, and an adjacent house was evacuated.

After the search was completed, the decision was made not to remove the chemical drums until the following morning. Agent Smith and Sgt. Johnston both testified that the materials were not removed that evening because of the excessive smoke and water inside the house, the lack of lighting, and the lack of proper removal equipment. Sgt. Johnston also testified that there was no immediate danger of explosion that evening and that, if there had been, the removal equipment could have been obtained.

The officers departed from the residence at approximately 12:30 a.m. The police secured the house by having a patrol car remain all night. At approximately 8:00 a.m. the next morning, AFT agent James Anderson arrived at the house and helped members of the bomb squad remove the chemical drums. No warrant was obtained for the entry and seizure.

In July 1981, the defendant was indicted for manufacturing explosive materials without a license, 18 U.S.C. §§ 842(a)(1) and 844(a), and unlawful storage of explosive materials, 18 U.S.C. §§ 842(j) and 844(b). The district court initially denied defendant's motion to suppress, but reversed its ruling *sua sponte* four days later. The lower court concluded that a warrant should have been obtained once the officers had determined that no immediate danger of explosion existed, and had left the premises on that basis. The government appeals pursuant to 18 U.S.C. § 3731.

## II.

We note at the outset that the fourth amendment proscribes all unreasonable searches and seizures, and that, subject only to a few well delineated exceptions, warrantless searches are *per se* unreason-

---

1. Class C explosives are identified in 27 C.F.R. § 55.182(c) as "blasting agents." A blasting agent is defined in 27 C.F.R. § 55.11 as follows:

    Any material or mixture, consisting of fuel and oxidizer, that is intended for blasting and not otherwise defined as an explosive; if the finished product, as mixed for use or ship-

    ment, cannot be detonated by means of a number 8 test blasting cap when unconfined. A number 8 test blasting cap is one containing 2 grams of a mixture of 80 percent mercury fulminate and 20 percent potassium chlorate, or a blasting cap of equivalent strength....

able. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is also well settled, however, that the fourth amendment "does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967); *United States v. Scott,* 578 F.2d 1186, 1189–90 (6th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978). "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona,* 437 U.S. at 392, 98 S.Ct. at 2413. When considering this issue, the burden is on the government to show the existence of such an exceptional situation. *Arkansas v. Sanders,* 442 U.S. 753, 760, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951).

In *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Supreme Court discussed the "exigent circumstances" exception to the warrant requirement as it relates to official entries onto fire-damaged premises. In doing so, the Court also discussed the appropriateness of warrantless entries by police when summoned by firemen to assist them in their investigation.

In *Tyler,* firemen arrived at the defendant's burning store shortly after midnight. While dousing the flames, a fire lieutenant reported that two plastic containers of flammable liquid had been found in the building. After determining that the fire could have been caused by arson, the fire chief called a police detective. The detective and the fire chief entered the building at approximately 3:30 a.m. to investigate the cause of the blaze. Their efforts, however, were hampered by darkness, steam and smoke. Before leaving at approximately 4:00 a.m., the officials seized the two containers. At 9:00 a.m. the next morning, the assistant fire chief and the same detective returned to complete their investigation. More evidence of arson was discovered and seized. Four weeks later, another policeman entered the building, took photographs, and seized physical evidence. All of the entries and seizures were made without search warrants or the defendant's consent.

The Supreme Court initially found that a burning building was a sufficient exigent circumstance to justify the warrantless entry by firemen. The taking of the plastic containers was upheld as a plain view seizure. *Michigan v. Tyler,* 436 U.S. at 509, 98 S.Ct. at 1949. After the fire was extinguished, the Court determined that officials needed no warrant to remain on the premises for a reasonable time to investigate the cause of the blaze and to seize evidence of arson.[2] The subsequent morning entry by the assistant fire chief and the detective was permitted as merely a continuation of the initial investigation. The third entry, however, was clearly detached from the initial exigency and thus was invalid. *Id.* at 511, 98 S.Ct. at 1951.

### III.

■ A prompt investigation of the fire's origin was permitted in *Tyler* "to prevent [the fire's] recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace," and "to preserve evidence from intentional or accidental destruction." *Michigan v. Tyler,* 436 U.S. at 510, 98 S.Ct. at 1950. In this context, we believe that the presence of potentially explosive chemicals in the defendant's house are exactly the kind of "continuing dangers" the *Tyler* Court had in mind when it ruled that investigating officials could remain on the premises for a reasonable time after the blaze to determine its cause.

2. The Court also cautioned that "[t]he circumstances of particular fires and the role of firemen and investigating officials will vary widely." *Michigan v. Tyler,* 436 U.S. at 510 n. 6, 98 S.Ct. at 1950 n. 6. Accordingly, "appropriate recognition must be given to the exigencies that confront officials serving under these conditions, as well as to individuals' reasonable expectations of privacy." *Id.*

During the course of their investigation, fire officials discovered a large quantity of chemicals used in the manufacture of fireworks. Since the firemen were not trained in the handling of explosive materials, they summoned police officers with the necessary expertise to aid in the investigation. While the mere occurrence of a fire at a residence does not give police officers *carte blanche* to enter the premises, *United States v. Hoffman,* 607 F.2d 280, 283 (9th Cir.1979), we hold that the firemen's delegation of these "render safe" operations to the bomb squad officers and the ATF agent was eminently reasonable, and thus the warrantless entry by these officers was justified as a continued response to the exigency created by the fire itself. *Michigan v. Tyler,* 436 U.S. at 510, 98 S.Ct. at 1950. Once inside, the officers had the right to seize objects of apparent evidentiary value which were in plain view. *Michigan v. Tyler,* 436 U.S. at 509–10, 98 S.Ct. at 1949–50; *Mincey v. Arizona,* 437 U.S. at 393, 98 S.Ct. at 2413; *Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971); *United States v. Callabrass,* 607 F.2d 559, 564 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). Indeed, the factual setting of this case is quite similar to that presented in *United States v. Callabrass,* 607 F.2d 559 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980), in which the second circuit also relied on *Tyler* to uphold a warrantless seizure of potentially explosive chemicals from a fire-damaged house by bomb squad members and a narcotics officer. *Id.* at 562–64.

We further hold that the actual seizure of the chemical drums the following morning was lawful. Our conclusion is fully supported by that portion of *Tyler* which addresses the subsequent morning entry onto the defendant's premises by the assistant fire chief and the police detective:

> On the facts of this case, we do not believe that a warrant was necessary for the early morning re-entries on January 22. As the fire was being extinguished, Chief See and his assistants began their investigation, but visibility was severely hindered by darkness, steam, and smoke. Thus they departed at 4 a.m. and returned shortly after daylight to continue their investigation. Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. Under these circumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence.

*Michigan v. Tyler,* 436 U.S. at 511, 98 S.Ct. at 1950.

The defendant argues that agent Anderson seized the chemical drums to further a criminal investigation, and thus should have obtained a warrant. We note, however, that the question of agent Anderson's subjective intention does not control the issue of whether there were exigent circumstances in this case. *See United States v. Callabrass,* 607 F.2d at 563. Indeed, the police detective in *Tyler* was also pursuing a criminal investigation when he seized evidence of arson during his morning entry onto the defendant's fire-damaged premises. This evidence was not suppressed by the *Tyler* Court. In the present case, the record indicates that Anderson was a trained expert in explosives who helped the bomb squad remove the chemical drums from the basement. Therefore, regardless of what he hoped to accomplish by seizing the evidence, the fact remains that Anderson helped remove dangerous chemicals which were a potential hazard to the neighborhood, and his actions were no more intrusive than those of the police detective in *Tyler.*

The defendant also contends that a warrant should have been obtained once the officers had determined that there was no immediate danger of explosion, and had left the premises on that basis. We disagree. The fact that the chemicals were relatively stable while in a stationary position does not negate Sgt. Johnston's testimony that the chemicals were explosive materials and hazardous. We also question whether a

showing of immediate danger was necessary when the officers, who already had the right to seize the chemical drums under the plain view doctrine, chose to wait for several hours due to adverse and possibly unsafe conditions. When the fire and police officials in *Tyler* were unable to complete their arson investigation due to adverse conditions, the Supreme Court upheld their subsequent morning entry and seizure of evidence even though there was no threat of danger. As noted earlier, the Court justified the morning entry as "no more than an actual continuation of the first, . . . ." *Michigan v. Tyler,* 436 U.S. at 511, 98 S.Ct. at 1950.

In the present case, the officers had the right to seize the chemical drums on the night of the fire, but decided against it due to similar adverse conditions. The officers left at approximately 12:30 a.m. and returned seven and one-half hours later. Under the circumstances, we also find that the morning entry by the bomb squad and agent Anderson was no more than a continuation of the first entry, and thus the officers did not need to obtain a warrant before removing the hazardous chemicals.

Accordingly, the district court's suppression order is REVERSED.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I believe that the district court's entry of the suppression order was correct under the circumstances. Accordingly, I must respectfully dissent from the majority's decision to reverse it. The majority is correct when it states that the question presented on appeal is whether the warrantless seizure of evidence from the defendant-appellant's premises on July 21, 1981 was proper

under *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). This statement of the issue is misleadingly simple, however. While the general principles of *Michigan v. Tyler* appear clear, the difficulty in determining the reach of its precise holding is apparent not only from this panel's inability to agree on its application to the present facts, but from the district court's obvious need to wrestle with the issue and from the Supreme Court's recent grant of certiorari in a Michigan state court case dealing with this precise question.[1]

In *Tyler* there were three entries by firefighters and investigators: (a) during the night while the fire was being extinguished, made by firefighters and a police detective; (b) at 9:00 a.m. the next day, by a fire investigator and the same detective; and (c) a few weeks after the fire when photographs were taken of the burned structure. The Court upheld the warrantless entry for purposes of extinguishing the blaze. Since the nighttime investigation of the cause of the blaze had been "severely hindered by darkness, steam and smoke" the court found that the fire investigator's re-entry the following morning also did not require a warrant. That entry was viewed as a mere continuation of the first. All later entries absent a warrant were deemed impermissible and the evidence gained in the process properly suppressed.

The precise holding in *Tyler* is as follows:

In summation, we hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the

1. The Supreme Court has accepted certiorari in *Michigan v. Clifford,* —— U.S. ——, 103 S.Ct. 812, 74 L.Ed.2d 1012. There, a fire broke out at 5:42 a.m., was extinguished by approximately 7:04 a.m. and the arson investigators arrived at 1:00 p.m. The Michigan court of appeals found that the subsequent entry was impermissible and that evidence seized pursuant thereto should have been suppressed. The issues upon which the Supreme Court accepted certiorari are framed identically to those in the briefs

before this Court. Recognizing that there are factual differences between the cases which may or may not warrant contrary results, I believe that a further statement from the Supreme Court regarding the bounds of *Michigan v. Tyler* would only enhance the decisionmaking process of this Court. Accordingly, I feel compelled to not only dissent from the result the majority reaches, but from the decision to reach it as well.

warrant procedures governing administrative searches. Evidence of arson discovered in the course of such investigations is admissible at trial, but if the investigating officials find probable cause to believe that arson has occurred and require further access to gather evidence for a possible prosecution, they may obtain a warrant only upon a traditional showing of probable cause applicable to searches for evidence of crime.

436 U.S. at 511–12, 98 S.Ct. at 1950–51 (citations omitted). The key inquiry then is to determine where within the language of *Tyler* each of the entries in the present case fits. More precisely, the legality of the morning search of the home on Leander Street turns on whether the entry at approximately 8:00 a.m. on January 21, 1981 was simply a continuation of the first entry or was "an additional entry" which would require the use of a warrant. I am convinced that it falls within the latter category.[2]

There is no doubt that the initial entry by the firefighters was warranted under *Tyler*, as were the subsequent entries by the bomb squad and the ATF on that same night. Those were the only warrantless entries *Tyler* would justify on the facts of this case, however. An examination of the facts in *Tyler* reveals the basis for the Supreme Court's determination that the morning entry was a mere continuation of the original one and a similar review of the present case indicates why the two are distinguishable.

In *Tyler* the blaze was not completely extinguished and the firefighters did not leave the premises until 4:00 a.m. Though investigators had begun their search, the darkness, steam and smoke rendered them unable to continue or to draw any conclusion regarding the cause of the fire. In addition, while some chemicals had been found during the nighttime entry, no judgment as to the presence of criminal activity or arson could have been made at that time. Shortly after daylight, fire investigators returned in an effort to finally determine the cause of the blaze. In discussing the justification for allowing the completion of such an investigation the Court noted:

Fire officials are charged not only with extinguishing fires, but with finding their causes. Prompt determination of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction. And, of course, the sooner the officials complete their duties, the less will be their subsequent interference with the privacy and the recovery efforts of the victims. For these reasons, officials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished.

While the *Tyler* Court held that the morning entry was justifiable in light of these continuing concerns, no such concerns existed at the time of the morning entry here.

The blaze at the Leander residence was extinguished by 9:30 p.m., approximately one-half hour after it had begun. Testimony at the hearing indicated that the firefighters actually left the property some 15 minutes before ATF agent Smith and Sergeant Johnston of the Detroit Bomb Squad arrived. At that point, arson investigators were still on the scene. The house was searched thoroughly for some time.[3] By

2. It is unclear exactly which showing would have been necessary for the acquisition of the warrant. Given that the presence of arson had been largely established, it would appear that probable cause sufficient to justify a criminal warrant would have been necessary. Since I believe that an administrative warrant was a *minimum requirement* in this case and there was no warrant whatsoever, an analysis of the proper warrant requirements is unnecessary. Suffice it to say that I believe that *some* warrant should have been obtained before the morning entry.

3. There is some discrepancy as to the exact timing. The appellees claim that the investigation proceeded for from one to one and one-half hours. If the majority's estimated time of departure (12:30 a.m.) is correct, the investigators had examined the house for two and one-half hours, leaving the premises a full three hours after the blaze had been extinguished.

the time the decision was made to leave the residence, the cause of the fire and the presence of illegal activities (illegal fireworks) had been firmly established. The officers present testified that they were satisfied that the home was secure and that there was no immediate danger to the house or to the life or property of the surrounding residents. If such a danger had existed by virtue of the chemicals or fireworks present, Sergeant Johnston indicated that any necessary removal equipment could and would have been obtained.

The officers testified that the lack of lighting, the fire-damaged condition of the premises and the inconvenience of obtaining the removal equipment prompted the decision to await morning before removing the fireworks and chemicals found in the building. Though it appears that it may have been more convenient or more practical to return at a later time, there is nothing in the record to indicate that the kind of impediments necessitating a cessation of the investigation in *Tyler* were present here. The sheer length of time which the investigation covered *after* the fire had been doused, and the conclusions reached during the course of that investigation, indicate that the factors cited in this case, though hindering the removal of the contraband, did not "severely hinder" *the investigation.*

When the morning entry occurred, no fire-investigation officials were present.

The ATF and the bomb squad were the only bodies represented. The sole purpose of the morning entry was the removal and confiscation of the fireworks and chemicals.[4]

It is clear that the investigative function which the *Tyler* court sought to protect was fully complete by the time the Leander Street premises were vacated on the night of January 20.[5] As the majority notes, "The mere fact that a fire has occurred does not give police officers *carte blanche* to enter one's home, even when armed with probable cause to suspect that evidence of a crime may be within the premises." *United States v. Hoffman, supra* at note 5 (*citing Michigan v. Tyler,* 436 U.S. at 505–06, 98 S.Ct. at 1947–48). *Tyler* attempted to balance the fire victim's right to privacy against the need to protect everyone from the dangers posed by fire. I believe the district court recognized the tension existing between these valid interests and properly dealt with it on the facts presented. Judge Cook noted that, "Where there is a warrantless search, this Court must view very strictly any violations or alleged violations of an individual's constitutional rights; specifically, under the Fourth Amendment." Examining the facts with an appropriate degree of scrutiny, he then determined that the circumstances which prompted the officers and agents to leave the property on the evening of January 20, 1981, after a lengthy and extensive search of the premises, did not provide them with a sufficient basis upon which to defer or do

---

**4.** The majority relies on *United States v. Callabrass,* 607 F.2d 559 (2d Cir.1979) in support of its claim that the warrantless search was permissible. I do not believe *Callabrass* goes that far. In that case firemen were summoned to a fire in an unoccupied residence. While searching for victims they discovered chemicals, scales, vials and papers. Unsure if the chemicals could have been the cause of the fire, a narcotics expert was called in. Firefighters remained at the scene. When the chemicals were identified as hazardous, a bomb squad was called in to remove them. The other materials were then also seized. All evidence was found to be admissible since the warrantless search was deemed justified. The analysis and

holding based upon those facts would only support the proposition that the 10:00 p.m. entry of the ATF agent and the bomb squad were permissible without a warrant and that evidence seized *at that time* need not be suppressed. A subsequent re-entry was neither considered nor specifically permitted in *Callabrass.*

**5.** *See United States v. Hoffman,* 607 F.2d 280 (9th Cir.1979) (reentry unwarranted where blaze was under control and second entry was not for the purpose of either extinguishing the fire or investigating its cause).

away with the obtaining of a warrant.[6]  I wholeheartedly agree.[7]

6.  I find the failure to obtain a warrant particularly troubling given the presence of ample time in which to at least obtain a telephonic warrant.  *See United States v. Cuaron*, 700 F.2d 582 (10th Cir.1983); *United States v. McEachin*, 670 F.2d 1139 (D.C.Cir.1981); *United States v. Baker*, 520 F.Supp. 1080 (1981). To justify a re-entry after an eight-hour delay in which no effort to obtain a warrant was made on the basis of exigencies seems to stretch logic and the meaning of the term "exigent circumstances."

7.  The fact that the government bears a heavy burden when it attempts to justify any warrantless search, *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Hoffman, supra*, emphasizes the propriety of the district court's ruling in this case.