TORRUELLA, Circuit Judge
(Dissenting).
I respectfully dissent because I believe the majority has stretched the emergency doctrine beyond its limit, to the point where a warrantless entry into a person’s home is no longer based on a reasonable *399 suspicion of an ongoing emergency, but rather on speculation-based hypotheses lacking in objective factual support. The facts of this case, as found by the magistrate judge, compel me to reach the opposite conclusion from that of my colleagues, namely that there was no ongoing emergency inside Infante’s home to justify the firefighters’ warrantless entry there. There certainly was a legitimate need to inspect the inside of Infante’s home to ascertain how the explosion occurred, but absent exigent circumstances, such a search necessitated an administrative search warrant to comply with the strictures of the Fourth Amendment.
I begin my analysis with a look at Michigan v. Clifford, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984), a plurality opinion cited by the majority, because I believe it lays the proper framework for resolving the question on whether the firefighters’ warrantless entry in this case ran afoul of the Fourth Amendment. There, firefighters were called upon to extinguish a fire at the residence of the defendants, who were out of town. After the blaze was extinguished at 7:04 am, all police and firefighting personnel left the vicinity of the house. Around five hours later, a team of arson investigators arrived at the residence for the first time to investigate the cause of the blaze. Without a warrant, and without the consent of the defendants, the investigators entered the home and began an extensive search of the premises, commencing with the basement. At the basement, they found and seized evidence suggesting defendants had committed arson, and based on this evidence they proceeded to search the rest of the house, where they found additional evidence. The defendants sought to suppress all of the evidence, arguing that it had been obtained pursuant to a warrantless search that violated their rights under the Fourth and Fourteenth Amendments. Id. at 291, 104 S.Ct. 641.
A plurality of the Supreme Court agreed with the defendants and concluded that, where reasonable expectations of privacy remain in fire-damaged premises, searches into the cause and origin of a fire are subject to the warrant requirement of the Fourth Amendment, absent consent or exigent circumstances. Id. at 291-92, 297, 104 S.Ct. 641. The Justices noted that the constitutionality of warrantless entries onto fire-damaged premises depended on three factors, namely: (i) “whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment;” (ii) “whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy;” and (iii) “whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.” Id. at 292, 104 S.Ct. 641.
The government in Clifford conceded that there were no exigent circumstances to justify its post-fire searches, but argued nonetheless that the Court should exempt all searches aimed at ascertaining the origin and cause of a fire from the warrant requirement, or in the alternative that it modify its decision in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), to permit such post-fire searches. Clifford, 464 U.S. at 296, 104 S.Ct. 641. The Justices declined both invitations, noting that the post-fire search by the arson investigators was not merely the continuation of the earlier search, but rather was an independent search divorced from any need to attend to an emergency. Id. at 296-97, 104 S.Ct. 641. This set the case apart from Tyler, where the post-fire entry was held to be a continuation of the initial entry made by the firefighters, because after extinguishing the blaze they were not *400 able to secure the premises and complete their investigation, due to the dark and smoky conditions. Id. at 296, 104 S.Ct. 641. In the end, the plurality determined that the investigators’ post-fire search of the basement was illegal because it was conducted without an administrative search warrant and absent exigent circumstances. Id. at 297-99, 104 S.Ct. 641. The Court invalidated the ensuing search of the remainder of the house as it was carried out without a traditional criminal search warrant based on probable cause. Id.
Proceeding to apply the three factors elucidated in Clifford to the facts of this case, I conclude that: (i) Infante had retained a significant privacy interest in his home after he left for the hospital; (ii) there were no exigent circumstances compelling the firefighters’ warrantless entry; and (iii) the firefighters’ primary object in conducting that entry was to search for the cause and origin of the explosion, and absent an emergency, an administrative search warrant was needed to protect Infante’s Fourth Amendment rights.
In Clifford, the plurality noted that “[s]ome fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the owner’s subjective expectations.” Id. at 292, 104 S.Ct. 641. Such is not the case here. The record reflects that after the explosion, Infante told the 911 dispatcher that he was going to take care of things and secure his house because he was not going to be there. When intercepted by Stevenson and Donovan on the way to the hospital, he also cautioned them against going to his home, because he kept a wolf-dog loose on the property. Despite the presence of this animal, the firefighters were able to approach the house, which had no appreciable damage, and determine that its exterior doors were locked. Therefore, it is clear that Infante had time to secure his house after the explosion occurred, and took precautions to ensure that no intruders would be able to gain access. After taking care of his injuries, it would have been highly probable for him to return to his home and resume his normal life, an indication that he still harbored a strong expectation of privacy there.
The record also belies the assertion that an ongoing emergency was in progress at the time the firefighters arrived. Under the emergency doctrine, in order to make a valid entry into Infante’s home without a warrant, there must have been an emergency situation requiring prompt action by the firefighters to “save someone’s life or prevent harm.” United States v. Beaudoin, 362 F.3d 60, 66 (1st Cir.2004), rev’d on other grounds sub nom. Champagne v. United States, 543 U.S. 1102, 125 S.Ct. 1025, 160 L.Ed.2d 1009 (2005); see also United States v. Moss, 963 F.2d 673, 678 (4th Cir.1992) (holding that, to invoke the “emergency doctrine,” the official who makes the entry must have an objectively reasonable belief that an emergency existed that required immediate action “to render assistance or prevent harm to persons or property within”); Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir.1998)(“[P]olice officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance.”). In Beaudoin we held that an entry pursuant to the emergency doctrine required “a reasonable basis, sometimes said to be approximating probable cause, both to believe in the existence of the emergency and to associate that emergency with the area or place to be searched.” 362 F.3d at 66.
The majority has concluded that the firefighters in this case were aware of sufficient objective facts to create a reasonable belief in their minds that an emer *401 gency was in progress which required their prompt entry into Infante’s home. They point out to the dispatch’s broadcast heard by the firefighters announcing a “fire call and rescue” stemming from a “propane explosion” that had severed part of an individual’s finger and lacerated his hand. Maj. Op. at 393. The majority also places much emphasis on the fact the broadcast reported a propane explosion, while Infante later told Stevenson that the explosion had occurred when he was filling up a butane lighter. Id. They further recount how the firefighters observed blood inside the house and heard a “hissing noise” emanating from within. Id. at 393. From this factual scenario, the majority concludes that “Infante’s reports of an explosion involving volatile gas, whether propane or butane, coupled with his significant wounds that were consistent with the occurrence of an explosion, caused the firefighters to reasonably perceive an emergency — the prospect of a secondary explosion resulting from escaping gas.” Id.
I find it difficult to subscribe to this view as in this case there were no objective indicia to suggest that volatile gas was somehow venting from within the residence. First, the firefighters testified at the suppression hearing that they knew, before entering the house, that the “hissing sound” they heard was most likely that of a water faucet left on by someone, and not of “escaping gas,” as the majority seems to intimate. Second, the majority has merely stated that the fact that an explosion occurred, whether from a propane tank or a butane lighter, and of sufficient force to sever the tip of Infante’s finger, can also lead to a reasonable belief that volatile gas was creeping inside the residence, thereby posing an immediate risk of a secondary explosion. Yet the occurrence of one explosion does not automatically give rise to an inference that another may follow, and the majority has not explained how a butane lighter, or a similar type of container exploding, can conceivably lead to a danger of that magnitude. And although the firefighters had been informed by Sanford dispatch that the explosion had originated from a propane tank of indeterminate proportions, it was highly unlikely that a propane tank caused Infante’s injuries, or at least one large enough to create the type of risks envisioned by the majority.
Stevenson himself testified that Infante’s injuries were more consistent with Infante’s account of a butane lighter exploding than with the dispatch’s report of a blast from a propane tank. He later clarified that he thought the injuries were caused by something “a little bit larger” than a butane lighter, given the lesions he observed on Infante’s chest. In any case, it is extremely unlikely that the injuries could have been caused by an explosion of a propane tank of significant dimensions. Stevenson testified that it takes a “BLEVE” or a boiling liquid expanding vapor explosion, for a propane tank to explode, and that this event normally occurs when a tank is heated to a degree where the liquid inside will turn into vapor, to a point where the material of the tank is unable to contain the increase in pressure, which in turn causes the tank to explode. However, neither Stevenson nor any of the other firefighters who testified at the suppression hearing explained how such a potent event could have happened inside Infante’s home without leaving any trace for the firefighters to observe, either on the exterior of the house or the interior portion that the firefighters were able to examine through the window. If a BLEVE did occur, then it most likely originated inside some kind of container housing flammable gas, small enough for Infante to hold in his hand, but not large enough to mount an explosion of the magnitude nec *402 essary to create the hazards of a secondary explosion, fire or gas leak. Since such hazards were very remote, there was no reasonable basis, much less a reasonable basis approximating probable cause, to believe there was an ongoing process inside the home which necessitated immediate entry to save someone’s life or prevent harm.[10]
I further add that none of the cases cited by the majority supports their conclusion that the search in this case was justified. These cases stem from the Supreme Court’s decision in Tyler, where the Court determined that once fire officials make a warrantless entry onto a building to fight a blaze, they need not secure a warrant to remain there “for a reasonable time to investigate the cause of the blaze” after it has been extinguished. Tyler, 436 U.S. at 511, 98 S.Ct. 1942. However, one must distinguish the initial entries made by officials in Tyler and its progeny — entries which were predicated on the presence of objective circumstances that clearly beaconed the existence of an emergency — from those officials’ subsequent entries into the premises to search for the origins and causes of the fires or explosions featured in those cases. These subsequent warrantless searches have been held to be valid as long as they are a “continuation” of a valid initial entry. The problem with the majority’s analysis in this case is that it incorrectly compares the initial warrantless entry into Infante’s home with the subsequent searches effectuated by officials in Tyler and its progeny. The majority’s logic is flawed in this respect as these latter entries were held to be valid not as their own independent entries, but as mere continuations of the initial warrantless entries that had been predicated on objective circumstances signaling an ongoing emergency.
In fact, in all of the cases cited by the majority, there existed sufficient objective circumstances to compel the conclusion that an ongoing emergency was present inside the structure to be searched: United States v. Boettger, 71 F.3d 1410, 1412 (8th Cir.1995) (defendant had told officers that there was a “chemical explosion” when he was making a firecracker in his apartment, there was smoke in the apartment and one of defendant’s neighbors had to help him escape from the apartment);[11] United States v. Martin, 781 F.2d 671, 672 (9th Cir.1985) (initial entry justified because the police had received a report of a person bleeding inside the home and an officer who arrived at the scene saw and smelled smoke coming from the home); United States v. Urban, 710 F.2d 276, 277 (6th Cir.1983) (initial entry justified because firefighters were responding to an actual fire, and when they arrived on the scene they heard hundreds of explosions originating from within the residence); and United States v. Callabrass, 607 F.2d 559, 563 (2d Cir.1979) (initial entry justi *403 fied due to an actual observable fire in the apartment).
Conversely, none of those circumstances are present in the instant case — as the magistrate judge’s report and recommendation well noted,
[f]rom the time of their respective arrivals at 60 Avery Road to the time they entered the residence, none of the four firefighters observed evidence of an explosion of any kind, a fire, smoke, or a propane tank as they walked around the perimeter of the residence. There was no evidence of damage to the house, and no sign of the presence of another person.
United States v. Infante, No. 10-cr-123, 2011 WL 31417, at *4 (D.Me. Jan. 3, 2011). There being no telltale signs of a fire, gas leak or any other hazard, I have to conclude that the majority’s supposition that there existed a risk of a secondary explosion is entirely speculative, and such an unsubstantiated inference practically places the burden on Infante to rule out any conceivable reason for the firefighters’ warrantless search. The facts of this case and the behavior exhibited by the firefighters instead give rise to a much stronger inference: that no emergency existed at all and that the only justification for the entry was to search for the origin and cause of the explosion. Moreover, the record seems to reflect that the firefighters entered the premises almost one hour after arriving on the scene. The purported reason for the delay was that they needed to wait for an animal control officer to arrive and secure Infante’s dog, but the record shows that before this animal control officer arrived, some of the firefighters were able to roam freely around the house, and were able to walk right up to the main doorway and determine that it was locked, with no interference from the animal. Thus, if the firefighters truly believed that an emergency was in progress, such that a person’s life was in peril, they would not have waited almost an hour to enter the house. Further, after an hour of inspecting the residence and finding no noticeable change in the condition of the structure, it should have been self-evident that no emergency existed.
Absent an emergency or Infante’s consent, the firefighters were required to obtain an administrative search warrant to enter Infante’s home and search for the cause of the explosion. Clifford, 464 U.S. at 294, 104 S.Ct. 641. Although the Justices in Clifford reasoned that determining the cause and origin of a blaze serves a compelling public interest, they clearly stated that absent an emergency, “[i]f the primary object of the search is to determine the cause and origin of a recent fire, an administrative warrant will suffice.” Id. Firefighters will be able to obtain such a warrant if they can show that a fire of undetermined origin has occurred on the property and that the search they are proposing is reasonable in scope and will not overly intrude on the fire victim’s legitimate privacy expectations. Id.; see also Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). I can think of no reason that would compel a different requirement when the event that transpired was a small explosion instead of a fire. Accordingly, I would have required the authorities in this case to have obtained an administrative search warrant before searching Infante’s home.
On a final note, I admit that the result in this case would have been different had the explosion occurred in an apartment complex or at a home located in a densely populated area. The need for prompt inspection at those locations generally outweighs a resident’s expectations of privacy because of the serious dangers that a fire or an explosion might pose to neighbors *404 who are in close proximity, especially in apartment settings. However, given the rural nature of the home’s surroundings in this case, these dangers were not patently present here, a circumstance that has been overlooked by the majority.
While I do not condone Infante’s conduct or his crimes, I cannot sit idly by when faced with decisions that effectively erode some of our most cherished constitutional protections. More so, when the majority’s approach has been to place the burden on the defendant to prove the absence of an emergency, while making all possible inferences in the government’s favor. This while disregarding the Supreme Court’s teachings that warrantless entries under the Fourth Amendment must be analyzed by viewing the circumstances presented objectively, and without regard to individual officials’ subjective intentions, no matter how well-intended. See Brigham City v. Stuart, 547 U.S. 398, 404, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). For the foregoing reasons, I would have reversed the district court’s decision to deny Infante’s first motion to suppress; and I would have remanded the case to the district court so that it could determine whether the statements made by Infante at the hospital should also have been suppressed as fruits of the poisonous tree.

. The majority has also justified the entry on the basis that it was necessary to protect Infante from bodily injury once he returned from the hospital. But the fact that a harm may possibly come into fruition several hours into the future does not fit with our court’s delimitation of the emergency doctrine to those situations where “swift action is required to safeguard life or prevent serious harm.” United States v. Martins, 413 F.3d 139, 147 (2005)(emphasis added).

. The Eighth Circuit in Boettger was not clear on whether the officials in that case were able to see the smoke inside the apartment before they entered. Yet that court seemed to justify the initial entry in that case, at least in part, on the fact that the explosion had occurred in an apartment complex with close neighbors, a circumstance not present in this case. Id. at 1414 (expectations of privacy "must be lowered where a resident admits working with explosive materials in an apartment complex with close neighbors”).