[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 6, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14651
Non-Argument Calendar

_____

D. C. Docket No. 07-00320-CV-J-33-HTS

DAVID O'BERRY HEARN,

Petitioner-Appellant,

versus

STATE OF FLORIDA,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 6, 2009)

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

David O'Berry Hearn, a Florida prisoner, appeals <u>pro se</u> the judgment against his petition for a writ of habeas corpus. 28 U.S.C. § 2254. Hearn argues that the state court erred when it denied his motion to suppress because there were false statements in the affidavit that provided probable cause for a warrant to search his property. The district court ruled that the issue was barred from review under <u>Stone v. Powell</u>, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976), and we granted a certificate of appealability to address that ruling. We reverse and remand.

## I. BACKGROUND

The police requested a search warrant for Hearn's property while investigating an armed kidnapping in Nassau County, Florida. The victim of the kidnapping identified Mark Land as one of her three assailants. When the police apprehended Land, he identified Mark Wade and Darryl Smith as his cohorts. While the police questioned Land in his home, Land received a telephone call that he told the police was made by cohort Wade. The police traced the call to Hearn's home and drove to the residence to search for Wade.

According to the affidavit for the search warrant, the police believed that Wade was armed and dangerous and surrounded Hearn's home. As the police approached the house, they observed through the opened doorway of a shed and

2

behind the shed some paraphernalia used to manufacture methamphetamine. Based on their observations, the police requested a warrant to search Hearn's home, "together with the yard and curtilage," "any vehicles," and "any person reasonably believed to be engaged in or connected with [the] illegal activity," for "any instrumentalities possessed or used in connection" with the manufacture of methamphetamine, and to seize "methamphetamine and anything known to be used in the manufacture of methamphetamine[.]"

A Florida court issued a warrant to search Hearn's property. The police executed the search warrant and seized from the house, its curtilage, and vehicles near the house evidence associated with the manufacture of methamphetamine, including liquid methamphetamine, precursor materials and paraphernalia used to "cook" methamphetamine, about 3,700 dollars in cash, surveillance equipment, 60 guns, and ammunition. Hearn was arrested and charged by information with trafficking in methamphetamine, the sale or manufacture of a controlled substance, possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia.

Hearn moved to suppress the evidence seized from his property on two grounds. First, Hearn argued that "[t]he original intrusion upon [his] property by law enforcement and upon which the information which led to the search warrant

3

was based, was pretextual and, as such there was no probable cause for the search or the issuance of the search warrant[.]" Second, Hearn argued that, even "[i]f the officers [were] to be believed [about the] phone call[,]" they should have requested a search warrant before they entered Hearn's property. Hearn alleged that the police had made "multiple unsuccessful attempts" to purchase drugs from him through confidential informants and the officers misstated information that they had acquired during their investigation of an armed kidnapping so they could enter Hearn's property. Hearn also asked the trial court for an evidentiary hearing as required by Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978), and to "void[]" the search warrant because it was based on an affidavit that contained false statements.

The trial court held a hearing on Hearn's motion. The state and Hearn presented evidence regarding the information relied on by the police to enter Hearn's property, the observations by the police of paraphernalia used to manufacture methamphetamine, and the evidence seized after the police executed the search warrant. Hearn introduced copies of telephone records from the date of the search that he alleged established that no calls were made from his house to Wade's house during, or within a few hours of, the time that the officers questioned Wade in his home. At the conclusion of the hearing, the trial court

4

summarily "den[ied] [Hearn's] motion to suppress as to the physical evidence."

Hearn pleaded guilty to the sale and possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. In exchange for Hearn's plea of guilty, the state nol prossed Hearn's trafficking charge. The trial court sentenced Hearn to imprisonment for ten years.

Hearn appealed the denial of his motion to suppress. Hearn argued that the police entered his property without probable cause and could not obtain a search warrant even though they observed drug paraphernalia in plain view. Hearn alleged that "[e]ven assuming exigent circumstances" that the police were in search of a "suspect armed felon[,]" the facts known to the police "were insufficient to establish probable cause to believe that Wade would be at Hearn's house." As part of his argument, Hearn alleged facts different from those stated in the affidavit and, in a footnote, stated that "[t]he false statements in the affidavit should be excised. Franks v. Delaware, 438 U.S. 154 (1978)." In the alternative, Hearn argued that, even if the police were entitled to enter his property they lacked probable cause to request a search warrant. The state appellate court affirmed Hearn's conviction without opinion.

Hearn also filed in a Florida court a motion for post-conviction relief. See Fla. R. Crim. P. 3.850. Hearn argued that the trial court erred when it denied his

5

motion to suppress because the affidavit contained "patently false statements" and those statements "were not excluded from consideration at [the] hearing [on his motion to dismiss]." The trial court denied Hearn's motion on the ground that the issue had been resolved in his direct appeal. The state appellate court affirmed without opinion the denial of Hearn's post-conviction motion.

Hearn filed a federal petition for a writ of habeas corpus and argued that the trial court was misled by false testimony in the affidavit for the search warrant, and the state responded that the federal court could not reach the merits of Hearn's argument for two reasons. First, the state argued that Hearn received a full and fair opportunity to litigate his Franks argument in state court and the federal court was barred under Stone from examining the issue in a habeas corpus proceeding. Second, the state argued that Hearn failed to exhaust his Franks argument in state court and he had not alleged cause and prejudice to excuse the procedural default. The state explained that Hearn argued on direct appeal that the officers violated the Fourth Amendment when they entered his property without probable cause and that Hearn's challenge to the affidavit and reference to Franks in a footnote did not fairly present the constitutional issue to the state court. In the alternative, the state argued that Hearn's challenge to the search warrant lacked merit.

The district court ruled that Stone v. Powell barred review of Hearn's

petition. The district court ruled that Hearn was afforded a full and fair opportunity to litigate the validity of the search of his property in state court. The district court denied Hearn's request for a certificate of appealability.

## II. STANDARD OF REVIEW

We review de novo the denial of a petition for a writ of habeas corpus. Clark v. Crosby, 335 F.3d 1303, 1307 (11th Cir. 2003).

## III. DISCUSSION

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494, 96 S. Ct. at 3052. We have interpreted the phrase "opportunity for full and fair litigation" to "mean[] just that: an opportunity.'" Lawhorn v. Allen, 519 F.3d 1272, 1287 (11th Cir. 2008) (quoting Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)). In Caver, we have explained that "if state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair[,]' . . . then Stone v. Powell precludes federal habeas corpus consideration of those issues whether or not the defendant avails

7

himself of that opportunity." 577 F.2d at 1193.

A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In Tukes v. Dugger, we addressed whether Stone foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513–14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a Stone v. Powell bar to our review of the claim." Id. at 514.

In the light of Tukes, the district court erred when it concluded that Stone foreclosed review of Hearn's petition. Hearn argued at trial and on appeal that the warrant to search his home was obtained by use of false statements in the supporting affidavit. At the Franks hearing, Hearn introduced copies of telephone

8

records that allegedly established that no call was made from his home when the police questioned Wade in his house, which gave the police reason to enter Hearn's property in search of a suspect in the armed kidnapping. Neither the trial court nor the appellate court made any findings of fact to reconcile the statements of the police and the telephone records. Although we presume, as we did in Tukes, that Hearn's Fourth Amendment argument was "given . . . careful, judicious, and studied attention[,]" the state courts nevertheless failed to make "explicit findings on matters essential to" Hearn's Fourth Amendment argument. 911 F.2d at 514. The summary denial of Hearn's motion to suppress, coupled with a summary affirmance by the Florida appellate court, was "insufficient to deny [Hearn] consideration of the merits of his constitutional claim on federal habeas corpus review." Id.

We do not address the other arguments of the parties about exhaustion and the merits of Hearn's petition because these issues are outside the scope of the certificate of appealability. See Murray v. United States, 145 F.3d 1249, 1250 (11th Cir. 1998).

We **REVERSE** the judgment that denied Hearn's petition and **REMAND** for further proceedings.

**REVERSED** and **REMANDED**.

9