[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11976
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:07-cv-00320-VMC-MCR

DAVID O'BERRY HEARN,

Petitioner Appellant,

versus

STATE OF FLORIDA,
FLORIDA ATTORNEY GENERAL,

Respondents Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 21, 2011)

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

This appeal is the second time we have reviewed the denial of David

Hearn's petition for a writ of habeas corpus. 28 U.S.C. § 2254. Hearn alleged in his petition that the state court erred by denying his motion to suppress because there were false statements in the affidavit that provided probable cause for the warrant to search his property. The district court ruled that the issue was barred from review, under Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976), but we reversed and remanded because the state court had failed to make "explicit findings on matters essential to" Hearn's argument under the Fourth Amendment, Hearn v. Fla., No. 08-14651, slip op. at 8–9 (11th Cir. May 6, 2009). On remand, the district court denied Hearn's petition. The district court ruled that the officers had entered Hearn's property in exigent circumstances and lawfully had observed evidence that Hearn had been manufacturing methamphetamine, which provided probable cause to obtain a warrant to search Hearn's property. The district court also ruled that allegedly false statements in an affidavit that had supported the warrant were immaterial to a finding of probable cause and were not made deliberately or recklessly. We affirm.

A federal court may not grant a state prisoner a writ of habeas corpus when a claim has been adjudicated on the merits by a state court unless the decision is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or

2

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Suggs v. McNeil, 609 F.3d 1218, 1227 (11th Cir. 2010). A decision is "contrary to" clearly established federal law if either the state court reached a conclusion opposite to that reached by the Supreme Court on a question of law or the state court was presented with facts that are "materially indistinguishable" from relevant Supreme Court precedent, but arrived at a contrary result. Suggs, 609 F.3d at 1227. A state court makes an "unreasonable application" of clearly established federal law if the court "'identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.'" Id. (quoting Rutherford v. Crosby, 385 F.3d 1300, 1306 (11th Cir. 2004)).

The state court reasonably could have concluded that any misstatements in the affidavit about the reason that officers visited Hearn's property did not invalidate the warrant to search Hearn's property. Hearn was required to establish by a preponderance of the evidence that the affiant made false statements of fact either deliberately or recklessly. See Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978). The affidavit stated that a suspect in an armed robbery, Wayne Land, received a telephone call from Hearn while Land was being interviewed inside the home of Mark Wade, and that officers had learned the telephone call

came from Hearn's residence. Although Hearn argued that the statements were irreconcilable with copies of records that no calls were made from his house to Wade's house during or within a few hours of the time that the officers questioned Land inside Wade's house, the statements in the affidavit can be reconciled with the evidence presented by the government during the hearing on Hearn's motion to suppress. The affidavit was consistent with the testimonies of Wade and Darrell Smith that Smith called Wade from Hearn's house around 5:30 a.m. and the testimony of Officer Jenny Mann that, later that day, she observed inside Wade's house a caller identification machine displaying the telephone number for Hearn's residence. Officer Mann testified that she could not recall whether she looked at the machine after hearing Wade's telephone or a different telephone. A previous call from Hearn's residence to Wade could have caused the caller identification machine to display Hearn's number. Moreover, the state court could reasonably have concluded that the misstatement in the affidavit was not made deliberately or recklessly.

The state court also reasonably could have concluded that the affidavit contained sufficient information to provide probable cause to issue the warrant to search Hearn's property. The affidavit stated that officers went to Hearn's residence to search for Wade and, while the officers surrounded the property as

4

part of their search for Wade, they observed evidence that Hearn was manufacturing methamphetamine. The affidavit, coupled with evidence presented in the state court during the hearing on Hearn's motion to suppress, established that exigent circumstances allowed a warrantless entry onto Hearn's property and that the location where the officers observed evidence of Hearn's methamphetamine operation was outside the curtilage of Hearn's home.

The state court reasonably could have concluded that exigent circumstances allowed the officers' entry onto Hearn's property without a warrant. Under the exigent circumstances exception, a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant." Michigan v. Tyler, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949 (1978); see Johnson v. United States, 333 U.S. 10, 14–15, 68 S. Ct. 367, 369 (1948) (exigent circumstances include a suspect "fleeing or likely to take flight"). The victim of an armed kidnaping had identified Wade as a perpetrator, and officers went to Wade's house to investigate that crime. While at Wade's house, Land, who also was a suspect in the armed kidnaping, told the officers that Wade "could be hiding out and was known to hang around Hearn." The officers were in hot pursuit of Wade and, based on the possibility that he was still armed and might flee, were entitled to enter Hearn's property without a warrant to search for Wade.

5

The state courts could reasonably have concluded that the officers, having lawfully entered Hearn's property, observed incriminating evidence through the door of a shed left ajar. Under the open fields doctrine, officers may observe property outside the curtilage of a person's home. See United States v. Dunn, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139 (1987). To determine if property is within the curtilage of a home, courts must consider four factors: (1) the proximity of the property to the home; (2) whether the property is "included within an enclosure surrounding the home"; (3) the use of the property; and (4) what, if any, "steps [have been] taken by the resident to protect the area from observation by people passing by." Id. at 301, 107 S. Ct. at 1139. Officer Johnny Nolan testified at the hearing before the state court that he and Lieutenant Martinez walked to the back of Hearn's property to prevent Wade from trying to escape through the woods behind Hearn's house. Nolan stated that a shed was situated about 20 yards behind Hearn's house, behind a camper trailer, and about 10 yards behind the shed was a wooded area. Nolan stated that there was no fence or other object that obstructed the area between the woods and the shed; the shed appeared to house only chemicals and containers for storing liquids; and the shed was subject to observation by any member of the public passing through or near the woods. Mark Wade testified that a hunting club was located beside Hearn's property and

6

members of the hunting club had unlimited access to the woods, which were located about thirty yards from Hearn's house. Officer Nolan testified that he stopped between the shed and the woods and, from that position, he could see through the opened door of the shed paraphernalia "customarily" used to manufacture methamphetamine and smelled a strong odor of chemicals. Lieutenant Martinez, who was positioned behind Nolan and closer to the wooded area, observed in a small toolshed attached to the shed other paraphernalia used to manufacture methamphetamine. The state court reasonably have could concluded that the shed was outside the curtilage of Hearn's home and the officers lawfully observed the contents of the shed, which provided probable cause to obtain a warrant to search Hearn's property.

The district court did not err when it denied Hearn's petition. It was reasonable for the state courts to conclude that the warrant provided probable cause to issue a warrant to search Hearn's property for evidence that he had manufactured methamphetamine. The decision of the state court to deny Hearn's motion to suppress was not contrary to or an unreasonable application of clearly established federal law.

We **AFFIRM** the denial of Hearn's petition.