GRADER, Circuit Judge,
concurring in part and dissenting in part:
Although I agree with the remainder of the opinion, I respectfully dissent from the majority’s decision on the Fourth Amendment excessive force claim with respect to the second entry into Plaintiffs apartment. Whether that second entry is viewed as a separate search or, instead, as part of one continuous search, the officers are entitled to qualified immunity even when taking all facts in the summary judgment record in Plaintiffs favor. Accordingly, I would affirm the summary judgment in favor of Defendants on that claim.
A. If the Second Entry Is a Separate Search
The second entry met an exception to the warrant requirement — the emergency aid doctrine or the exigent circumstances doctrine or both. Plaintiff was off her psychotropic medications, was not taking care of herself, and was making violent threats toward other people. Upon the first entry, which the majority agrees was lawful under the Fourth Amendment, Plaintiff had threatened, to kill the officers while wielding a knife., Defendants did not know whether Plaintiff could escape from the apartment by another route, such as a window, or whether she had access to additional weapons, such as firearms, in ei *1235 ther event creating the immediate possibility of harm to the officers, Plaintiff, and others. Accordingly, as the majority holds, the officers could enter the apartment for the second time without violating the warrant requirement of the Fourth Amendment.
As to the method of effecting the second entry, Defendants determinedly pushed the door open while holding pepper spray and a service weapon. In light of the danger posed by Plaintiff, who held a knife and had threatened to kill the officers, the officers reasonably could conclude that entering the apartment in that way would not violate the Fourth Amendment’s prohibition on the use of excessive force.
The expert’s report that faulted the officers for electing to enter Plaintiffs apartment when and as they did does not create an issue of fact on either the timing or the method of the second entry. As we have cautioned, a plaintiff cannot avoid summary judgment merely by producing an expert’s report opining that an officer’s conduct was imprudent or inappropriate:
We have since placed important limitations on Alexander [v. City of San Francisco, 29 F.3d 1355 (9th Cir.1994) ]. In Scott v. Henrich, [39 F.3d 912, 915 (9th Cir.1994) ], we held that even though the officers might have had “less intrusive alternatives available to them,” and perhaps under departmental guidelines should have “developed a tactical plan” instead of attempting an immediate seizure, police officers “need not avail themselves of the least intrusive means of responding” and need only act “within that range of conduct we identify as reasonable.” We reinforced this point in Reynolds v. County of San Diego, [84 F.3d 1162, 1169 (9th Cir.1996),] which distinguished Alexander because “the court must allow for the fact that officers are forced to make-split second decisions.” We affirmed summary judgment for the defendant police officers despite experts’ reports stating — like the expert report in the case at bar— that the officers should have called and waited for backup, .rather than taking immediate action that led to deadly combat. [Id. at 1169-70.] We held that, even for summary judgment purposes, “the fact that an expert disagrees with the officer’s actions does not render the officer’s actions unreasonable.” [Id. at 1170.] Together, Scott and Reynolds prevent a plaintiff from avoiding summary judgment by simply producing an expert’s report that an officer’s conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless. [Id.] Rather, the court must decide as a matter of law “whether a reasonable officer could have believed that his conduct was justified.” [Id]
Billington v. Smith, 292 F.3d 1177, 1188-89 (9th Cir.2002) (footnotes omitted).
B. If the Second Entry Is Part of a Continuous Search
The first and second entries may, in the alternative, be considered part of a single, continuous search. Insofar as the exigent circumstances that justified the first entry were ongoing, the second entry was justb fied under the emergency aid exception.
When the officers retreated from Plaintiffs apartment after she had threatened them with a knife upon their initial entry, they had confirmation that Plaintiff in fact had a deadly weapon and appeared willing to use -it. That is, Plaintiffs behavior toward the officers during their initial entry only confirmed that her condition had deteriorated to the point of creating an emergency. She was now out of sight behind closed doors, where additional weapons, including firearms, could have been present. It was objectively reasonable, therefore, for the officers to believe that Plaintiff was even more of a danger to herself and to others than they had assumed be *1236 fore the first entry. Here, as in Michigan v. Tyler, 436 U.S. 499, 511, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), and Fisher v. City of San Jose, 558 F.3d 1069, 1077 (9th Cir.2009) (en banc), the passage of time was brief and the exigent circumstances that motivated the first entry “did not materially change from the- beginning of the standoff to the end.” Because the exigency persisted or worsened throughout, “the officers were not required to periodically reassess whether the exigency persisted throughout the standoff because the standoff was ‘no more than an actual continuation’ of the initial seizure.” Fisher, 558 F.3d at 1077 (quoting Tyler, 436 U.S. at 511, 98 S.Ct. 1942).
I would hold that reasonable officers could have concluded that they were entitled to continue the initial search and that determinedly pushing the door open with weapons readied was a reasonable amount of force when balanced against the need to resolve an ongoing emergency that involved a deadly weapon. See Billington, 292 F.3d at 1184 (“We analyze excessive force claims in the arrest context under the Fourth Amendment’s reasonableness standard. We balance ‘the nature and quality of the intrusion on the individual’s Fourth Amendment interests against the countervailing governmental interests at stake’ and ask whether, under the circumstances, ‘including the severity of the crime at issue, the suspect poses an immediate threat to the safety of the officers or others ...’” (quoting Graham v. Connor, 490 U.S. 386, 395-96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). In view of the extant legal principles, reasonable officers could conclude that their actions were permitted even though Plaintiff suffered from a mental illness. Police officers often interact with individuals who have a wide variety of specific needs, and there is no controlling case law that requires a different Fourth Amendment analysis for an officer on the street who faces those circumstances. See Deorle v. Rutherford, 272 F.3d 1272, 1283 (9th Cir.2001) (‘We do not adopt a per se rule [for excessive force] establishing two different classifications of suspects: mentally disabled persons and serious criminals.”). Moreover, we must “judge reasonableness ‘from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight’ and allow ‘for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.’ ” Billington, 292 F.3d at 1184 (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).
C. Conclusion
The district court properly granted summary judgment to Defendants on the Fourth Amendment excessive force claim concerning the second entry into Plaintiffs apartment. Defendants are entitled to qualified immunity. I therefore respectfully dissent from the majority’s contrary holding on that claim, but otherwise concur.